That's 4100229 for the appellant, Denise Ambrose for the appellee, Bruce Locher. Judge Mitchell granted the defendant's motion to quash and suppress on one ground only, and that is that the results of the defendant's wife's petition to rescind the statutory summary suspension of her driver's license gave preclusive effect to the issue in the defendant's case as to whether there were reasonable grounds to stop the vehicle in which he was riding as a passenger and that his wife was driving. Now, the defendant at this point in his responsive brief has said that the decision in Hurlburt controls this issue. In other words, Hurlburt simply reaffirmed Moore and said that what happens in the statutory summary suspension, even if it's the same person, does not have preclusive effect in a criminal case. Also, there's no mutuality of the parties. So at this point, he's arguing that Judge Mitchell's order, saying that there was collateral estoppel, necessarily incorporated the factual findings and legal conclusions of Judge Olson. There's no indication from his ruling that that was the case. He made no such explicit adoption. So he did take evidence, did he not? Yes, separate evidence. In fact, there were like five witnesses? Judge Mitchell heard much more comprehensive evidence than Judge Olson did, which is exactly what Moore pointed out, that statutory summary suspensions are much more abbreviated because they're meant to be short hearings and this was a hearing on a motion to suppress. So yes, the evidence he heard, Judge Mitchell heard, was much more extensive. So he never reached many of the issues that are... I guess it's a little confusing to me. If the ruling is the state was collaterally estopped, why hear evidence? Well, he heard evidence and then he made the decision solely on the grounds that it's collateral estoppel rather than going ahead and reaching the rest of the... Well, could it be just ruled, I don't need to hear any evidence because the state's collaterally estopped from making this argument anyway. Sure. I mean, it just seems inconsistent to me to take evidence and then make a ruling on collateral estoppel, although clearly the order simply says that. Yes, I mean, I think the parties submitted some sort of memorandum to the court, so perhaps... I noticed in the briefs there's no question of standing, but I'm curious whether the passenger in the vehicle has standing to raise the question whether this vehicle was improperly stopped. I think the Illinois Supreme Court and both the United States Supreme Court have said that, yes, it's a seizure for the passenger as well when there's a stop of the vehicle. Well, that would explain why it's not in the briefs. Well, yeah, I'd like to raise that argument, but... Well, I could have done some independent research, but I thought I'd just ask Learning Council and you'd set me straight if you did so, so thank you. With so many of the search and seizure, the reason this case, I think, has to go back down is I have a hard time distinguishing between questions of law and questions of fact, and it seems like in a search and seizure case, there aren't necessarily inferences that have to be drawn, and it seems more appropriate for the trial judge to make those inferences. The case in point here is you have a series of 911 callers. The first one says that he's living at the corner of, I think it was North Clay and North Main Street and Independence, and he said he heard shots, five shots fired from a high-powered shotgun, or, excuse me, he didn't say shotgun, a firearm, and it sounded like it was coming from North Clay Avenue, and then he said his blinds were closed, he didn't see anything, but he heard a vehicle speeding down Independence Avenue and then turning south, and then, of course, the officer runs to his vehicle, he gets the dispatch, and one minute later, he sees this southbound vehicle, and it's one half mile from where the speeding vehicle would have turned, and so he begins to follow it. In the meantime, his other officers are conducting a grid search of other streets in the area and see no other vehicular traffic. So the officer makes a stop, and there are inferences to be made from that. In other words, to determine if the officers decided that the vehicle was connected to the shooting, and it should be up to the trial judge to decide whether that was a reasonable inference for a Terry stop. And I just don't know if this court is in a position to make that decision de novo, which is what defense counsel is essentially asking at this point. It seems like Judge Mitchell's erroneous application of collateral estoppel led him, he bypassed all these factual and legal determinations that are crucial to the motion, and I think he should be given the first bite of the apple. Are there questions? Seeing none, you'll have rebuttal. Thank you. Counsel? Good morning. Good morning, Court. Counsel? I think what's got to be decided here was, was Judge Mitchell wrong? Was Judge Mitchell wrong in suppressing the evidence? He wasn't. Even though he decided the evidence on the basis of collateral estoppel, he did, as the court noted, he took evidence. He heard witnesses. He listened to calls into 911. He also saw, as did Judge Olson, a video which contained audio of the stop of the Jackson automobile. Now, Denise Jackson was driving that vehicle that early morning, Terry's wife. The officer who stopped her testified that he observed absolutely no violations of any traffic law, nothing. The reason he stopped this vehicle was because he heard this shots fired dispatch, and he said other than one other vehicle, this was the only vehicle he saw in the downtown area. Now, preceding the hearing in front of Judge Mitchell, we had a hearing in front of Judge Olson, and that was to rescind the summary suspension of Denise Jackson. Judge Olson heard the arresting deputy's testimony, Denise Jackson's testimony, and also the same DVD which contained audio of the stop of Denise Jackson. And the judge, Olson, I believe was transferred as part of the record in this case, noted that, hey, there was nothing to connect the shooting with the stopping of this vehicle. The officer had nothing, no basis for stopping that car. The court also noted, Judge Olson also noted, that assuming a shooting took place or shots were fired in the area where supposedly they were fired, there were other streets that a vehicle could have turned off on if, in fact, the vehicle was involved. And I think the interesting thing is here, we don't know that a vehicle was involved in the firing of the shots. A caller called in, reported shots fired, and then said he heard a vehicle drive up. Nothing to connect that vehicle with the shooting, certainly no description of a vehicle, nothing saying that anybody who shot him, any gun was in the vehicle. One of the callers that called in, and that's on the audio, when asked by the dispatcher, well, when did you hear these shots? She said, I think approximately 15 minutes ago. I'm not sure when the first caller heard the shots. I don't think he said when he heard the shots. I don't know what time lapse there was between when he called in and when he heard the shots. But there's nothing to connect the Jackson vehicle with the shooting. And once the deputy, Deputy Weber, had stopped the vehicle, he waited. Now, Ms. Jackson stopped the vehicle when they put the emergency lights on, the deputy did. So, she and the other passengers in the car, including Terry Jackson, had been seized. Did he go to the car, that being the deputy, right away? No. He waited. And he waited. And he waited. And he waited until two other police agencies came to the scene and a number of police officers were there at the car. And it's at that time that he gets on his public address system, or whatever you call it, and tells the driver to leave the vehicle, back up. And as she does that, that's Denise, she's handcuffed and placed in a squad car. And then Terry is the next one out. Judge Mitchell heard all this evidence, and what Judge Mitchell was presented with was an initial motion to quash, arrest, and suppress evidence, based on the unlawful stop, and then a supplemental motion to quash, arrest, and suppress evidence alleging the collateral estoppel. He heard all the evidence. He took this matter under advisement. And then he made his decision. And he said, basically, Judge Olson was right. Judge Olson was right. This was a bad stop. He just hit collateral estoppel. Now, then the Supreme Court came back and reversed the Fourth District and said, well, collateral estoppel isn't appropriate in this circumstance, in this situation. But that doesn't make the decision Judge Mitchell made in suppressing evidence wrong. And there's case law I've said or did in my brief saying that, hey, while the reason utilized by the trial court may be wrong, it's the result that counts. And in this case, there's more than sufficient evidence showing that, in fact, the stop made was wrong. When Terry Jackson was removed from the vehicle by the deputies, he had to walk back to one of the police officers. And remember, all these officers had their guns drawn. He was, I think it was either 10 to 15 feet he was asked to walk. And then he was asked by that officer, do you have anything on you that could poke me or hurt me, something to that effect. And no admonishment of Miranda rights or anything before that question was asked. And Terry Jackson, in response to that, said, yes, I've got a gun in my pocket. And the officer searched him, found the gun and took it from him and then took him to the squad car and, according to the testimony at that time, advised Terry Jackson of his Miranda rights. Now, that question by the officer was done to solicit an incriminating statement from Terry Jackson. And I've got one case cited in my brief. And then this court, last year in 2010, utilized the same rationale, it was in a drug case, saying that asking a person who was in a house if they had any drugs on their person, that was an incriminating statement and was not permitted. And so we submit that that question was inappropriate and not justified by the law. But the fact is that was Judge Mitchell right? Did he have ample evidence to decide that, hey, this was a bad search, a bad stop, and everything that followed from that has to be thrown out? And I believe that's the appropriate ruling in this case. Are there any questions? It doesn't look like it. Thank you, counsel. All right. Thank you. Rebuttal, please. The difficulty with what Mr. Loescher is suggesting is that I don't think this court is in a position to make a decision with findings of fact. Even though there was evidence in the record, Judge Mitchell simply did not reach so many of the questions that require findings of fact or determinations of credibility. What's our standard of review? Well, you always defer to the findings of fact unless they are manifestly erroneous. And of course there are no factual findings in this case to which you can defer. So that makes it a little difficult for you to apply the facts to the law in this case. We've had many cases before where on a motion to suppress where there might not be one issue that was reached and it's remanded back down for the trial judge to decide. And Judge Mitchell certainly did not adopt the factual findings of Judge Olson. They heard entirely different evidence and there was a void in the evidence before Judge Olson. There was no testimony about where the shots were fired from. Whereas with the 4911 callers, in this case the one guy said it was from North Clay Avenue and a second caller who said he was living at 847 Hackett. He also said it was from North Clay. And then there was a third caller who also said I think it was from North Clay. So you've got that void that is filled in this case. And then of course you have the inference that has to be made from the content of the first caller. He hears the shots emanating from North Clay Avenue. He says that he's living on North Main. And he hears the vehicle speeding down Independence and then turning south on North Main. So there's an inference to be made that the shots are fired from that vehicle. But that inference, I don't know if this court is equipped to wear that hat. To make that factual determination that those two things are connected. Also the fact that the officer then sees the vehicle just such a short time later, a half mile away. And the vehicle isn't heading in the direction that the speeding vehicle was supposed to be turning. And it's the only other vehicle in the area. I mean because of the time of night in this small town. Also Mr. Loescher mentioned the length of the stop. I guess he's talking about whether the defendant was unlawfully detained for a long period of time. The stop was at 2.48 a.m. And it was pretty smart for the Weber to wait for the other officers to come since there were five people in this vehicle. And he was dealing with possible firearm violation. And it was, the defendant was removed from the car three minutes later. That's not a really long period of time. And... Probably depends on whether or not you're the person being stopped, how long it is. It seems longer to him, yes. And also the manner in which the officers had them exit the vehicle was, it was for safety precautions. And I think this court in Legion said that officers, the fact that you use, that they have their guns out and they even handcuff somebody doesn't transform it into an arrest. And the defendant here was not put in handcuffs until after he said that he had a firearm. So if we remand this based upon collateral, will the state think Judge Mitchell is going to reverse himself? I think he has, I mean, I think this is a close case on the evidence. But I think he should be given the first bite of the apple. Make a decision on, I listed all the issues that he never reached. There are four or five of them. And I think he should decide that, and then we'll go from there. Okay. Thank you, counsel. Thank you. Thank you. The case is submitted, and the court will stand in recess.